WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shaka,<br><br>                Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                Defendants. | No. CV 15-0050-PHX-SMM (BSB)<br><br>**O R D E R** |

On January 12, 2015, Plaintiff Shaka, who is confined in the Arizona State Prison Complex-Yuma, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. In a February 13, 2015 Order, the Court denied the deficient Application to Proceed and gave Plaintiff 30 days to pay the administrative and filing fees or file a complete Application to Proceed. On March 2, 2015, Plaintiff filed a certified six-month trust account statement. In a May 12, 2015 Order, the Court granted the Application to Proceed and dismissed the Complaint for failure to state a claim, specifically, the failure to allege facts to link the alleged constitutional violation to any named Defendant. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order. On May 26, 2015, Plaintiff filed his First Amended Complaint (Doc. 10). The Court will dismiss the First Amended Complaint and this action.

. . . .

### I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

**II.     First Amended Complaint**

In his single-count First Amended Complaint, Plaintiff sues Defendants Charles L. Ryan, Director of Arizona Department of Corrections ("ADOC"); Richard Pratt, ADOC Interim Director of Health Services at the Central Office; Lori Johnson, ADOC Facility Health Administrator ("FHA")/Corizon Site Manager at ASPC-Yuma's Dakota Unit; and Anthony N. Medel, Assistant FHA at ASPC-Yuma's Dakota Unit. Plaintiff seeks declaratory and injunctive relief and monetary damages.

Plaintiff again asserts a claim for the denial of constitutionally adequate medical care. In its last Order, Plaintiff was informed of the standard to state a claim for constitutionally deficient medical care, specifically, that Plaintiff must allege a serious medical need to which each defendant had acted with deliberate indifference. The Court expressly stated that in an amended complaint, Plaintiff must identify the constitutional right violated, the name(s) of the defendants who violated that right, exactly how each defendant violated Plaintiff's constitutional rights, and how Plaintiff was injured. Because Plaintiff had failed to allege any facts against any named Defendant in his Complaint, his Complaint was dismissed. The Court expressly warned Plaintiff that an amended complaint supersedes the original complaint and that, after amendment, the Court would treat his original complaint as non-existent.

In his First Amended Complaint, Plaintiff asserts that the Defendants knew that he suffered from knee pain and attaches copies of inmate letters, grievances, grievance appeals, and responses thereto, concerning his knee pain. Plaintiff largely leaves it to the Court to parse the legible portions of his attachments to determine the nature of his medical need and its severity and how any Defendant may have acted with deliberate indifference to his medical needs.[1] Plaintiff asserts that the exhibits show that all four

---

[1] Plaintiff also quotes from documents filed in a class action concerning prison medical care. *Parsons v. Ryan*, CV12-0601-PHX-DKD (D. Ariz.), and alleges that he is a member of the class. Plaintiff quotes from documents filed in that case that reflect deficiencies in the provision of medical care to ADC inmates. However, these documents are not sufficient to support that *Plaintiff* was actually denied constitutionally adequate medical care. The stipulation entered in *Parsons* does not provide that *every* ADOC inmate received deficient care for serious medical needs. In short, citation to

Defendants had "sufficient notice" of his knee pain and that since 2014, the Defendants have failed to ensure that he received "the prompt & required medical treatment." He also asserts that responses to his Health Needs Requests ("HNRs") were not prompt and that "Specialist Orders & Requests" were not followed, "or sent to Dr. Latrell, [and/or] treatment [sic]."[2] He asserts that none of the Defendants performed their assigned duties "by which their position in the Grievance granted them to do so."

The documents submitted by Plaintiff reflect the following facts: Plaintiff has been suffering from pain in both knees since at least January 2013. (Doc. 10 at 36.) In February 2014, an MRI of each of Plaintiff's knees was performed and tears were observed. (*Id.*)

On June 9, 2014, Plaintiff submitted an Inmate Informal Complaint Resolution stating that although he was to have received an outside consultation, seventeen months had passed without treatment for his knees and he continued to be in pain. (*Id.*) In a June 26, 2014 response, Corrections Officer III ("CO III") Connell stated that he had not received a response from nursing supervisor Pulido regarding Plaintiff's June 9, 2014 informal resolution and told Plaintiff that he could proceed to the next step. (*Id.* at 37)

On June 27, 2014, Plaintiff submitted an Inmate Grievance to the "FHA" in which he stated that he had been waiting since January 2013 for treatment for his knees. (*Id.* at 38.) Plaintiff further noted that he had seen Dr. Vanderhoof on June 19, 2014, and Dr. Vanderhoof had recommended knee replacement surgery for both knees. (*Id.*) Plaintiff further stated that he had not yet been seen by a provider or informed whether surgery had been scheduled. (*Id.*) In a July 14, 2014 response, FHA Medel stated that the healthcare provider had submitted a request for an outside consultation regarding

---

*Parsons* does not support that Plaintiff was actually denied constitutionally adequate medical care. As discussed herein, Plaintiff has otherwise failed to state a claim for deliberate indifference to his serious medical needs, despite the guidance provided in the last Order and Plaintiff's considerable litigation experience and ability.

[2] Plaintiff's attachments refer to a December 19, 2014 appointment with an orthopedist, but Plaintiff spells the physician's name in various ways. The Court refers to this orthopedist as Dr. Latrell, although it is unclear how his name is actually spelled.

- 4 -

Plaintiff's knee problems, which the Clinical Coordinator had just received and which began "the process of submission for review." (*Id.*)

On July 20, 2014, Plaintiff submitted an Inmate Grievance Appeal to the Assistant Director of Health Services in which he expressed his dissatisfaction with Medel's response and asking whether "the MRB in Phx approve knee replacement of both knees." (*Id.* at 35.) On August 6, 2014, Plaintiff submitted another Inmate Grievance Appeal to the Assistant Director of Health Services "per Grievance Coordinator on 8/6/14." (*Id.* at 39.) Plaintiff stated that he still had not been seen by the healthcare provider or informed whether he had been approved for surgery and stated that he was still in pain. (*Id.*) In an October 6, 2014 response, someone, on behalf of Ryan, denied Plaintiff's appeal noting the following:

> Plaintiff was seen by an orthopedist on June 19, 2014, who had diagnosed Plaintiff with pseudo-gout and degenerative joint disease. Apparently at that appointment, the orthopedist injected corticosteroids and pain medication into Plaintiff's "suprapatellar pouch," which brought immediate relief. The orthopedist told Plaintiff that his knees did not look terrible and that he would see Plaintiff as needed. On July 14, 2014, a request for surgical intervention was denied by the Utilization Management physician, who instead ordered the continuation of conservative management so long as Plaintiff's symptoms were relieved by injections. Plaintiff also continued to receive Sulindac for pain management. Plaintiff was to submit an HNR if he felt that he needed another injection or his symptoms worsened.

(*Id.* at 34.)

On October 12, 2014, Plaintiff submitted an HNR complaining of knee pain. In response, on October 28, 2014, Plaintiff was referred to the "Nurse Line." (*Id.* at 32.) In an October 14, 2014 Inmate Letter Response, Vanessa Headstream, "Program Evaluation Administrator" of the "Health Services Contracting Monitoring Bureau," stated that

Plaintiff's October 29, 2014 grievance appeal had been forwarded to her for review. (*Id.* at 33.) She stated that she had forwarded Plaintiff's "correspondence" to the Corizon Site Manager at Plaintiff's facility for review. (*Id.*) She also told Plaintiff that, for timely response to his concerns, he should bring his concerns to the Corizon Site Manager and then proceed through the Inmate Grievance process if he was dissatisfied. (*Id.*)

On December 19, 2014, Plaintiff was transported for his appointment with orthopedist, Dr. Latrell. Dr. Latrell recommended injections for Plaintiff's knees, but he could not administer the injections until Corizon authorized the injections.

On December 21, 2014, Plaintiff submitted an Inmate Informal Complaint Resolution to the FHA, Complex Site Manager. (*Id.* at 29.) In it, Plaintiff stated that he had seen Dr. Latrell, who had recommended injections for Plaintiff's knees that could provide relief for up to six months, but Dr. Latrell was unable to administer the injections until Corizon approved the treatment. (*Id.*) Dr. Latrell instead prescribed oral medications. (*Id.*) Dr. Latrell told Plaintiff that permanent relief would require joint replacement surgery. (*Id.*) Plaintiff complained that, because he was not allowed to receive the injections at the December 19 appointment, he would likely have to go another two months before he received treatment for his knee pain. (*Id.*) Plaintiff further contended that removal of bone chips in his knees, rather than knee replacement, would relieve his pain and was less drastic than replacement surgery. (*Id.*) Plaintiff complained that Corizon prevented Plaintiff from receiving the injections Dr. Latrell recommended, which if given at the time, could have relieved his pain. (*Id.*) Finally, Plaintiff noted that, although Dr. Latrell had prescribed medications following Plaintiff's return to prison, Plaintiff had yet to receive the prescriptions. (*Id.*)

In a January 6, 2015 response, Johnson stated that Dr. Latrell had determined that total knee replacement was not necessary and that he wanted to try injections, but because injections required preauthorization from Corizon, he could not administer them at that appointment. (*Id.* at 31.) Johnson reported that Corizon had since authorized the injections and that Plaintiff would be scheduled "with the provider" to receive them. (*Id.*)

In a January 14, 2015 Inmate Grievance, Plaintiff noted that it had been almost 30 days since he was seen by Dr. Latrell, but that he still had not received treatment for his knees. (*Id.* at 28.) He also noted that when he had previously received injections, he only experienced relief for one and half hours. (*Id.*) Further, Plaintiff noted that Dr. Latrell had not been provided with Plaintiff's February 2014 MRIs. (*Id.*) Plaintiff asked to be returned to Dr. Latrell for injections or surgery. (*Id.*) In a February 9, 2015 response, Assistant FHA Madeline Lowell stated that Plaintiff had an appointment for injections "coming up." (*Id.*) In an Inmate Letter Response dated January 28, 2015, Ryan stated that surgery had not been recommended by Dr. Latrell and that Plaintiff was on a "medical hold until [his] next appointment at the end of February. (*Id.* at 27.)

In an February 3, 2015 Inmate Letter to Ryan, Plaintiff disagreed with Ryan's characterization of Dr. Latrell's recommendations and noted that he still had not received injections recommended on December 19, 2014. (*Id.* at 26.) Plaintiff noted that Dr. Vanderhoff, who had seen Plaintiff's February 2014 MRIs, had recommended knee replacements. Unlike Vanderhoof, Dr. Latrell had not seen the MRIs. (*Id.* at 24.)

In a February 10, 2015 Inmate Letter Response to Plaintiff's February 3 letter to Ryan, Headstream informed Plaintiff that Corizon had approved the recommended injections, which were to be administered within the month. (*Id.* at 25.)

On February 17, 2015, Plaintiff submitted an Inmate Grievance to Johnson, which is illegible. On February 25, 2015, Plaintiff submitted an Inmate Grievance Appeal from Johnson's response, which is also illegible. (*Id.* at 18.) Also on February 25, 2015, Plaintiff submitted an HNR asking to see the provider because of pain in his knees. (*Id.* at 19.) On April 24, 2015, Plaintiff submitted an Inmate Grievance to the Grievance Coordinator, which is illegible. (*Id.* at 17.) In an April 29, 2015 response to Plaintiff's Medical Grievance Appeal to the Director, someone on behalf of Ryan denied Plaintiff's appeal, noting the following:

> On February 17, 2015, Plaintiff was issued knee sleeves for each knee. On February 24, 2015, Plaintiff received injections in each knee and non-

steroidal anti-inflammatory drugs were recommended for daily pain management, which he had received. Plaintiff was seen by the orthopedist again on April 14, 2015, who recommended further diagnostic testing. Finally, a request for an MRI of Plaintiff's left knee had been made, and if approved, Plaintiff would be scheduled.

(*Id.* at 15.)

Another MRI was approved on April 29, 2015. (*Id.* at 16.) On May 7, 2015, Plaintiff submitted an Inmate Grievance Appeal of Johnson's response to his grievance, which is illegible. (*Id.* at 14.)

### III. Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 at 371-72, 377 (1976).

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need"

by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Here, Plaintiff has not alleged facts sufficient to demonstrate that Defendants Ryan, Pratt, Johnson, or Medel were deliberately indifferent to his serious medical needs.

1  Plaintiff claims that, although Ryan delegates his authority to his subordinates, he is still
2  responsible "to ensure the provision of medical care is constitutionally adequate."  There
3  is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as
4  the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not
5  impose liability.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-92
6  (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d
7  1040, 1045 (9th Cir. 1989).  "Because vicarious liability is inapplicable to *Bivens* and
8  § 1983 suits, a plaintiff must plead that each Government-official defendant, through the
9  official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

10  Plaintiff further claims that Defendants were aware of his serious medical need and failed to take corrective action.  Assuming that Plaintiff had sufficiently alleged facts in his First Amended Complaint to support that he has or had a serious medical need, he has (again) failed to allege facts to support that any named Defendant was deliberately indifferent to this serious medical need.  Plaintiff's allegations, and attachments reflect that consulting physicians have indicated that surgery may be needed at some point, but have recommended less drastic treatment to see if Plaintiff gains relief without surgery. Plaintiff's attachments reflect that delays in him receiving treatment, but that he did receive the recommended treatment.  As noted above, mere delay is not sufficient to state a claim.  Plaintiff appears to assert that different outside consultants made different recommendations, Plaintiff's mere disagreement with the recommendation of one consultant does not support that any Defendant acted with deliberate indifference to his medical needs.   While Plaintiff may eventually receive surgery, Defendants did not act with deliberate indifference by following less drastic recommendations of physicians. At most, the attachments show that Plaintiff and consulting physicians differed as to whether Plaintiff's condition warranted surgery; Defendants reliance on the recommendations of consulting physicians did not constitute deliberate indifference. . Plaintiff's attachments reflect that he has been evaluated by specialists, received injections and other medication, and that further diagnostic testing has been approved.

1  Accordingly, Plaintiff has failed to state a medical care claim against Defendants Ryan, Pratt, Johnson, and Medel, and the Court will dismiss these Defendants and this action.

### IV.  Dismissal without Leave to Amend

Because Plaintiff has failed to state a claim in his First Amended Complaint, the Court will dismiss his First Amended Complaint.  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint.  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend.[3]  *Moore*, 885 F.2d at 538.

Plaintiff has made two efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court.  The Court finds that further opportunities to amend would be futile.  Therefore, the Court, in its discretion, will dismiss Plaintiff's First Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)  Plaintiff's First Amended Complaint (Doc. 10) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(2)  The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

. . . .

. . . .

. . . .

---

[3] Plaintiff is no stranger to litigation before this court.  *See Malumphy v. Cluff, et al.*, CV94-1728-PHX-SMM (LOA) (D. Ariz. Sept. 30, 1998); *Malumphy v. Ryan, et al.*, CV 95-0272-PHX-SMM (D. Ariz. Aug. 19, 1997); *Shaka v. Stewart, et al.*, CV00-1742-PHX-SMM (D. Ariz. Aug. 12, 2004); *Shaka v. Ryan, et al.*, CV10-2253-PHX-SMM (D. Ariz. Mar. 4, 2015);  As reflected in his prior actions, Plaintiff has gained a familiarity with crafting a viable complaint.

- 11 -

1       (3)    The docket shall reflect that the Court certifies, pursuant to 28 U.S.C.
2 § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of
3 this decision would not be taken in good faith.

4       DATED this 22nd day of June, 2015.

*[signature]*

Honorable Stephen M. McNamee
Senior United States District Judge